In re GLOBAL ENVIRONMENTAL SOLUTIONS, LTD., Debtor.

Seaton A. Gras and Timothy P. Smith, Trustee, Plaintiffs,

v.

Danube International, Ltd., Global Environmental Services, LLC, Refrigerant Separation Technology, LLC, Polar Refrigerant Technology, LLC, Theodore Atwood and Stephen Barnes, Defendants.

Bankruptcy No. 99–11189–MWV.
Adversary No. 01–1115–MWV.

United States Bankruptcy Court, D. New Hampshire.

May 13, 2004.

Lawrence K. Engel, Seattle, WA, Sandra A. Kuhn, Exeter, NH, for Plaintiffs.

Mark F. Sullivan, Exeter, NH, for Defendants.

## MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it the complaint of Timothy P. Smith, trustee of the bankruptcy estate of Global Environmental Solutions, Ltd. (the "Trustee"), and Seaton A. Gras (the "Plaintiff") against Danube International, Ltd. ("Danube"), Global Environmental Services, LLC ("Services"), Refrigerant Separation Technology, LLC ("Refrigerant"), Polar Refrigerant Technology, LLC ("Polar"), Theodore Atwood ("Atwood") and Stephen Barnes ("Barnes"), (collectively, the "Defendants"). The complaint includes seven counts. The first count alleges fraudulent transfers under 11 U.S.C. § 544(b) and N.H. RSA 545:1, *et seq.* The second count alleges successor liability against Polar. The third count alleges that Polar is the alter-ego of Global Environmental Solutions, Ltd. (hereinafter referred to as the "Debtor," the "Corporation" or "Solutions"). The fourth count challenges the security interest of the Defendant, Danube. The fifth count seeks to avoid any post-petition transfers under 11 U.S.C. §§ 549 and 362(a). The sixth count alleges breach of fiduciary duties against Atwood and Barnes, and the seventh count seeks an award of prejudgment interest.

There is no evidence of proper service on Danube, and Danube did not appear or take part in the trial. All of the other Defendants appeared and were represented by counsel. The three-day trial was commenced on November 4, 2002, and post-trial memoranda were submitted in December 2002. The Court has thoroughly reviewed its notes of the trial and the exhibits entered into evidence in connection with the writing of this opinion. At trial, the Court heard testimony from six witnesses, including the Trustee, the Plaintiff and Barnes.

### JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### FACTS

The Corporation was formed in 1994. Its shareholders were the Plaintiff, Graham Bunce and Aziz Karzan. At some point, Barnes contributed $24,000 and became a shareholder. In August 1995, the Corporation was reconstituted, and the shareholders, each owning twenty-five percent, were the Plaintiff, Barnes, Atwood and Bunce. On August 17, 1995, the Corporation borrowed $56,000 from Danube. In January 1996, the Corporation needed cash, and a cash call was made on the investors. The Plaintiff and Bunce refused to invest at that time. This resulted in a redistribution of the shares of stock. The Plaintiff, who worked at the Corporation, left the company in the Spring of 1996. In April 1996, the Corporation borrowed additional sums from Danube in the amount of $12,000 and $50,000. It gave Danube a security interest its assets, and the obligations were guaranteed by Atwood and Barnes. In May 1996, the Plaintiff filed a wage claim against the Corporation and was awarded $16,000. This is the basis for his claim in this bankruptcy. While there is some dispute, the Defendants argue that this Corporation ceased doing business at the end of 1996.

In January 1997, Global Environmental Services, LLC, was formed with members being Atwood, Barnes, Danube and University Trust. Refrigerant Separation Technologies, LLC, was also formed with

the same members. In December 1997, Polar Refrigerant Technologies, LLC, was formed, whose members included Atwood, Barnes, Danube, Forth Trust and Falcon Seagate.

In November 1996, Danube made demand for repayment of its loans and requested possession of all of the assets in which it held a security interest. Sometime thereafter, Danube exercised control over these assets and eventually leased some or all of them to Services and Polar. It is apparently this continued use of these assets by these different entities that leads to the Plaintiff's allegations of fraudulent conveyance, alter-ego and successor liability.

### DISCUSSION

At the outset, certain counts of the complaint can be dealt with summarily.

Count IV alleged that the Trustee had superior rights as a lien creditor than the security interest of Danube. There is little or no proof to support this allegation. Count IV is denied.

Count V sought to avoid post-petition transfers by the Debtor, if any. Once again, there is no evidence of any such transfer. Count V is denied.

Count VII is just a statement that the Plaintiff, if successful, is entitled to pre-judgment interest. This requires no separate determination by this Court.

Count I of the Plaintiff's complaint essentially restates the language of N.H. RSA 545–A:4 and N.H. RSA 545–A:5. Specifically, paragraph 34 of the complaint is N.H. RSA 545–A:4(I)(a), and paragraph 35 of the complaint is N.H. RSA 545–A:4(I)(b): Paragraph 36 of the complaint is N.H. RSA 545–A:5. The count refers to "[t]he transfers ... enumerated above" without any specifics but apparently refer-

ring to paragraphs 1 through 33 of the complaint. (Pl.'s Comp. ¶ 37.)

Under N.H. RSA 545–A:4(I)(a), the Plaintiff must prove actual intent to hinder, delay or defraud any creditor. While the intent necessary is usually inferred from the facts and circumstances of the case, the Plaintiff, in this case, has not met his burden of showing actual intent, either in connection with the granting of the security interest or the subsequent allowance of Danube to control its collateral.

Under N.H. RSA 545–A:4(I)(b), the Plaintiff must prove initially that the transferor did not receive "reasonably equivalent value." Value includes the curing of an antecedent debt as well as acquiring an interest pursuant to a security agreement. N.H. RSA 545–A:3(II). In the instant case, at the time the security interest was granted to Danube, it was owed $56,000 and agreed to lend an additional $62,000. There is insufficient evidence that the Danube received less than equivalent value at the time that the security interest was given.

Plaintiff's exhibit 115, the demand letter from Danube to the Debtor, dated November 10, 1996, indicates that the sum of the loans outstanding exceeded $135,000. Plaintiff's exhibits 98 and 99 show the value of the Debtor's assets as of December 31, 1996, to be $141,725 and $149,625, respectively. There is no evidence in the record to explain how these values were determined, i.e., whether they were reflected on the books of the Debtor or they were the actual value as of December 31, 1996. The Plaintiff provided insufficient evidence as to what assets were actually transferred to Danube or the value of the assets at the time of the transfer other than the exhibits referred to above. Based on the evidence before it, the Court cannot find that the Debtor received less than reasonably equivalent value when

Danube was allowed to control its collateral. Having found that the Debtor received a reasonable equivalent value for the collateral, the Court does not reach the provisions of N.H. RSA 545–A:4(I)(b)(1) and (2).

Having found that the Debtor received reasonably equivalent value for purposes of N.H. RSA 545–A:4(I)(b), the Court must find the same for N.H. RSA 545–A:5I. New Hampshire RSA 545–A:5(II) requires that the transfer be to an insider.

"Insider" includes:

  (b) If the debtor is a corporation:

    (1) A director of the debtor;

    (2) An officer of the debtor;

    (3) A person in control of the debtor;

    (4) A partnership in which the debtor is a general partner;

    (5) A general partner in a partnership described in subparagraph (4); or

    (6) A relative of a general partner, director, officer, or person in control of the debtor.

N.H. RSA 545–A:1(VII)(b) (1997). The Plaintiff has not met his burden to show that the transferee was an officer, director or in control of the Debtor or any other of the entities included in the definition of an insider. For all of the reasons cited above, Count I is denied.

▆▆▆ Count II seeks damages based on a theory of successor liability. In the case of *Kleen Laundry & Dry Cleaning Services, Inc. v. Total Waste Management, Inc.*, 867 F.Supp. 1136 (D.N.H.1994), the United States District Court for the District of New Hampshire outlined the requirements for a finding of a "de facto merger" or "continuity of enterprise" or "substantial continuity." With respect to the continuity of enterprise or substantial continuity, the court stated:

  The court examines a series of factors when determining whether successor liability is appropriate under this alternative theory:

    (1) retention of the same employees;

    (2) retention of the same supervisory personnel;

    (3) retention of the same production facilities in the same location;

    (4) production of the same product;

    (5) retention of the same name;

    (6) continuity of assets;

    (7) continuity of general business operations; and

    (8) whether the successor holds itself out as the continuation of the previous enterprise.

*Kleen Laundry*, 867 F.Supp. at 1140. In the instant case, the Court finds that the Plaintiff has met his burden in showing continuity of enterprise such that Polar should be responsible for the debts of Solutions. Evidence supporting this finding is as follows. Both Global Environmental Solutions and Global Environmental Services were referred to as GES. There was a continuity of at least two of the shareholders, Barnes and Atwood. The testimony of LeClair, an employee of Solutions, Services and Polar, supported the following: That the employees of all of the companies remained the same; that the equipment used by each essentially remained the same; that he performed the same tasks for all of these entities; that all entities provided the same services, i.e., recycling refrigerants; that the entities did business from One Lafayette Road in Hampton Falls, New Hampshire, although Polar subsequently moved to 89 Exeter Road in South Hampton, New Hampshire; that the entities dealt with the same customers. The evidence also showed that the EPA application for CFC certification of Solutions and Polar were essentially identical. Polar produced an advertising brochure entitled "Global goes Polar," which stated "[i]n an effort to further accommodate your refrigerant requirements

and better meet future business opportunities, Global Environmental Service has now become an integral part of Polar Refrigerants. Through this affiliation, Global has expanded its business resources and ability to better serve the customer." (Pl.'s Ex. 47.)

Further, upon the formation of Services, Solutions ceased operations, and upon the formation of Polar, Services ceased operations. Based on the above, the evidence clearly supports the finding that Polar is a successor to Solutions and Services and liable for the debts of Solutions, which are at issue in the instant adversary proceeding. Damages will be awarded in the amount of the allowed claims in the instant bankruptcy case of Global Environmental Solutions, Ltd.

Count III seeks damages on alter-ego theory and, since the Court has already found liability as a successor, the Court need not reach the alter-ego count.

Finally, Count VI seeks damages against Barnes and Atwood on a breach of fiduciary duty claim brought by the Plaintiff. In essence, the Plaintiff seeks damages alleging that he was mistreated as a shareholder of Solutions by two of the other shareholders, Barnes and Atwood. This Court disagrees. There is no question that Solutions needed an influx of capital. When asked to contribute, the Plaintiff declined. When asked to guarantee the debts to Danube, the Plaintiff declined. Faced with the realities of the situation, Barnes and Atwood took actions on behalf of the Corporation which they felt were necessary. Finally, with respect to this count, the Plaintiff provided no evidence of damages and, since there is no question that Solutions was insolvent, there can be no damages.

## CONCLUSION

The Court finds for the Trustee under Count II of the complaint against Polar with damages to be equal to the amount of the allowed claims in the Solutions bankruptcy case. All other counts against all of the other Defendants are denied.

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate final judgment consistent with this opinion.